Rockingham,
No. 4270.

JUDITH S. WISEMAN & *a.*

*v.*

FRANK D. MERRILL, *Commissioner.*

Argued October 5, 1954.

Decided November 4, 1954.

*Leo Liberson* (by brief and orally), for the plaintiffs.

*Louis C. Wyman*, Attorney General and *George F. Nelson*, Assistant Attorney General, for the defendant.

BLANDIN, J. The dispute concerns the meaning of a warranty deed dated March 31, 1949, given by the plaintiffs' predecessor in title, hereinafter called the grantor, to the State of New Hampshire. The land conveyed was used for the construction of the toll road and a road from the traffic circle to Rockingham Avenue, the extension of which continues on to join Route 16 in Newington. In this instrument, after describing the tract, the grantor also deeded "all rights of access, air, view and light pertaining to the remainder of abutting lands, belonging to the Grantor, his heirs, assigns, executors and administrators, as defined in Part 7 Chapter 90 of the Revised Laws as amended by Chapter 188 Laws of 1945 entitled 'Limited Access Highways.' " The plaintiffs claim that this conveyed no rights of access or other rights on the grantor's abutting lands as to the road leading from the traffic circle to Rockingham Avenue but only such rights as to the limited access or toll road, while the State claims that it owns all the disputed rights without this limitation. The intent of the parties as expressed in the deed and determined in the light of all the surrounding circumstances including the agreed facts is decisive as to which contention is right. *Pettee* v. *Chapter*, 86 N. H. 419.

By Revised Laws, *c.* 90, *pt.* 7, *s.* 1, as inserted by Laws of 1945, *c.* 188, the Legislature granted extraordinarily broad powers to the State Highway Commissioner to construct and regulate limited access highways "especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement or only a limited right or easement of access, light, air, or view by reason of the fact that their property abuts upon such limited access facility or for any other reason." Section 2 provides that the Governor and Council upon hearing, and deciding that there is occasion for laying out a "limited access facility including service roads" may appoint a commission to lay out the highway, and acquire property rights for "such facility and service roads, including rights of access, air, view, and light . . . . " That the purchase made might look to future needs is evident from the power to acquire "an entire lot, block, or tract of land, if by so doing the interests of the public will be best

served even though said entire lot, block, or tract is not immediately needed for the right of way proper . . . . " Section 3 authorizes the Commissioner to design and regulate any limited access facility so as to best serve the traffic for which it is intended and to specify the terms upon which any person may have access to it; and section 5 gives him the same authority to establish and regulate service roads as he has with respect to limited access highways.

The nature of the problem of through traffic with its requirements of speed coupled with safety is such that the bare regulation of the superhighway alone might be inadequate to solve it and this the Legislature appreciated as shown by part 7, section 4, giving the Commissioner power to designate "any existing road, street or highway within the State as included within a limited access facility" and also authorizing him after the establishment of the highway to permit other roads not a part of it to intersect it only at "such locations and *upon such conditions* as the highway commissioner shall approve." (Emphasis supplied.) See also, *s. 5, supra.*

With reference to the limited access or "toll road" involved in this case Laws 1947, *c.* 295, *s.* 1, in force at the time the negotiations took place and therefore relevant as bearing on the intent of the parties, but now repealed by Laws 1953, *c.* 237, extending the Commissioner's authority, directed him under the supervision of the Governor and Council to locate, operate and maintain it. By section 2(b) of Laws 1947, *c.* 295, he might acquire in the name of the State all the rights and easements and interests that he deemed necessary, and by *s.* 2(c) he could designate the locations, "and establish, limit, and control" such points of ingress and egress as he considered desirable and prohibit entrance to or exit from the toll road at all points not so designated.

The legislative purpose of these comprehensive statutes taken together clearly was to authorize the construction of a superhighway designed for through traffic and to give the Commissioner power to acquire rights and to make all regulations reasonably necessary for the accomplishment of this end. The grantor under whom the plaintiffs claim must be charged with knowledge of the full extent of the Commissioner's authority under all this legislation. *State* v. *Cote,* 95 N. H. 428, 430.

At the initial hearing on February 9, 1948, on the layout of the superhighway of which the grantor received notice, the maps of the location showed no detail of any connecting roads or even the

traffic circle. A later plan approved by the Highway Commissioner in August of the same year showed no road running northerly from the traffic circle to Rockingham Avenue but contained a notation "access to Rockingham Avenue for Cohen" and an arrow pointing northerly. However, as shown by the agreed facts, when on March 31, 1949, the disputed deed was passed the grantor made the conveyance "for the construction of the Toll road and a connecting service road or approach road from the Toll road to Rockingham Avenue." In these circumstances, he conveyed to the State the lot in question and all the rights of access, air, view and light pertaining to the remainder of his abutting lands as defined in R. L., c. 90, *supra*.

The plaintiffs argue nevertheless that the parties intended only a grant of the various rights as to the limited access highway and not as to the approach road leading from the traffic circle to Rockingham Avenue because of the reference to chapter 188. While the statutory reference serves to obscure rather than to clarify the meaning of the grant, we do not believe it was intended to restrict the grant but merely to define the nature of the rights conveyed. "Part 7, chapter 90 of the Revised Laws," authorized the Commissioner to impose the same restrictions upon service roads as upon limited access highways (*s.* 5) and the reference affords no reason to presume that the State's use of the land acquired was to be in any way limited to laying out and regulating the toll road only. The added expense, the delays, the general impracticability of purchasing in driblets the property and rights necessary for the construction of a limited access highway when all could be obtained in one transaction make it extremely unlikely that any such costly and cumbersome method was intended. The whole project was not a piecemeal proposition but a broad and far-reaching plan to lay out a limited access highway and all facilities reasonably necessary and appurtenant to it. Probabilities and not improbabilities must govern the interpretation of a disputed writing (*Berke Company* v. *Bridge Co.,* 98 N. H. 261), and it seems far more likely that the parties intended to bargain for all essential rights at one time than that they planned a succession of purchases.

Since the deed conveyed "all rights of access . . . pertaining to the remainder of abutting lands, belonging to the Grantor" the plaintiffs have no valid claim to a right of direct access from any part of their lands to the abutting land of the State. The grant

did not affect the grantor's right of access to Rockingham Avenue, which intersects the approach road, and thus affords access to the traffic circle. The indication upon the preliminary highway plan that there was to be "access to Rockingham Avenue for Cohen" confirms the probability that he was not to have access to the proposed highway or highways directly from the abutting lands which he retained.

The plaintiffs concede in their brief that local service roads are "integral parts of the superhighway" and subject to all its regulations but assert that this is not a local service road, but a "connecting service road or approach road." However, the physical situation as revealed by the exhibits including the plans and photographs makes it clear it could reasonably be found that the road from the traffic circle to Rockingham Avenue is so related to the limited access highway that in the interest of safely expediting through traffic the authorities could reasonably prohibit access to this road between the traffic circle and its intersection with Rockingham Avenue under their broad statutory powers as previously described.

Since the grantor had sold all the disputed rights relating to this road as well as to the superhighway, there was no occasion to notify him of further hearings concerning its layout. The plaintiffs could not object if no road had been built from the traffic circle to Rockingham Avenue. They are in a better position than as if such were the case for they are not denied all access to the facilities. They have frontage on Rockingham. Avenue which intersects the road leading into the traffic circle, so it cannot be said as a matter of law that there is unreasonable curtailment of their rights. *Cf. Interstate Bridge Authority* v. *Ham Estate,* 92 N. H. 277. The fact that regulation permitted access north of Rockingham Avenue and also allowed it to previously established businesses adjacent to the traffic circle does not make the ruling forbidding access between Rockingham Avenue and the traffic circle "arbitrary, discriminatory, and unlawful." *Opinion of the Justices,* 99 N. H. Supplement, June 15, 1954. Since it appears that the Commissioner's actions were proper and within the authority vested in him by statute, the bill against him cannot be maintained. *Wiseman* v. *State,* 98 N. H. 393, and authorities cited. The order is

*Bill dismissed.*

All concurred.